# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| TERRY LYNN WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:13-06024-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Terry Lynn Wilson seeks judicial review of the Commissioner of Social Security's partial denial of his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. The ALJ found that Plaintiff suffered from multiple severe impairments but retained the residual functional capacity ("RFC") to perform light work, thus he was not disabled prior to November 14, 2011. The ALJ also ruled that beginning on November 14, 2011, the date Plaintiff's age category changed under the Medical–Vocational Guidelines, Plaintiff became disabled.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits and SSI benefits on March 10, 2010, alleging a disability onset date of October 10, 2008. The Commissioner denied

Plaintiff's applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing during which Plaintiff amended his alleged disability onset date to March 19, 2010. On December 14, 2011, the ALJ issued his decision finding Plaintiff was disabled as of November 14, 2011. The Appeals Council denied Plaintiff's request for review on December 3, 2012, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability and SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the

Commissioner follows a five-step sequential evaluation process.[1] Plaintiff alleges the ALJ erred at step four because his determination that he could perform light work is not supported by substantial evidence on the record. Plaintiff contends the medical record supports a determination that he could not perform anything more than sedentary work, thus the ALJ should have found him disabled as of March 19, 2010.

The Court finds no merit to this claim. To begin, the Court emphasizes that the question here is not whether the record might support a determination consistent with Plaintiff's view of the evidence; the question is whether the record supports the ALJ's finding that Plaintiff could perform light work. *Buckner*, 646 F.3d at 556. And it does.

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her *credible* limitations. 20 C.F.R. § 416.945 (emphasis added). It is based on all the relevant *credible* evidence of record, not just evidence from medical reports or medical sources. *Id.*; *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (emphasis added). In determining a claimant's RFC, the ALJ may consider a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and attempts

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

to work.  SSR 96-8p.  It is the claimant's burden to prove her RFC.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Plaintiff argues that the ALJ erred in giving more weight to the opinion of Dr. David Cathcart, D.O., than to the opinion of his treating doctor, Dr. Kala Danushkodi, M.D.  Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).  The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record.  20 C.F.R § 404.1527(c)(2).  An ALJ cannot, however, give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques, or if the opinion is inconsistent with the other substantial evidence of record.  *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010).  "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."  *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so.  *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).  Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence.  *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

The ALJ gave little weight to Dr. Danushkodi's opinion that Plaintiff could not perform sedentary work, would require unscheduled breaks, and would miss two days a month due to health problems, because his opinion was not well-supported by acceptable clinical and laboratory diagnostic techniques; it was inconsistent with other substantial evidence in the record, including Dr. Cathcart's opinion; and it was inconsistent with the objective medical

evidence of record, including Plaintiff's lumbar x-rays.  R. at 18.  These findings are supported by the record.  For example, after examining Plaintiff, Dr. Cathcart submitted a thorough report discussing Plaintiff's health limitations.   R. at 238-40.  The report makes a convincing case that Plaintiff can lift 40 to 50 pounds occasionally and 20 pounds frequently.  On the other hand, Dr. Danushkodi's opinion is arguably inconsistent with her own treatment notes, in which she found Plaintiff was able to, and should, participate in aerobic conditioning exercises and back stretches.  R. at 373-74, 377, 379, 381.  Accordingly, the ALJ did not err in discounting Dr. Danushkoki's opinion.

Similarly, the ALJ did not err in discounting the two mental RFC assessments prepared by psychologist Dr. Bill Graham, Ph.D, who diagnosed Plaintiff with GAF scores of 30 and 36, indicating Plaintiff suffered from severe mental limitations.  The ALJ gave Dr. Graham's assessments little weight because they were not well-supported by acceptable techniques; they were inconsistent with other substantial evidence in the record; and because the doctor had seen Plaintiff only twice, a year apart.  R. at 18.  An ALJ is not required to adopt in its entirety any particular doctor's opinion or to choose between the opinions of any of the claimant's physicians.  *Martise*, 641 F.3d at 927.  The ALJ spent two paragraphs explaining why he gave Dr. Graham's opinion little weight, R. at 18, and the record validates his decision.  Among other things, the record shows Dr. Graham did not perform any objective testing on Plaintiff; rather he based his assessment on Plaintiff's subjective complaints.  R. at 231-35, 263-66.  Given Plaintiff's undisputed lack of credibility,[2] this was problematic.  Dr. Graham's report is even more difficult to credit given Plaintiff's minimal treatment history, which the ALJ noted.  R. at

---

[2] The ALJ found Plaintiff was not credible for a variety of reasons, including: (1) the inconsistencies between his subjective complaints and the evidence of record; (2) his minimal treatment for his mental health complaints; (3) evidence indicating he exaggerated his symptoms; (4) his poor work history; and (5) his activities of daily living which were inconsistent with his claim that debilitating symptoms precluding him from performing any work.  R. at 16-18.  Plaintiff does not contend the ALJ erred in making this determination.

5

16. Plaintiff did not seek any treatment for depression until after a year after his alleged onset date, at which time he merely asked his primary care physician for anti-depressant medication. R. at 298-300. In fact, during this same visit, the doctor noted Plaintiff was "trying to get disability," and that when he recommended Plaintiff see a psychiatrist, Plaintiff said he wanted to speak with his lawyer first and would let him know about his decision. R. at 299-300. The above constitutes substantial evidence supporting the ALJ's decision to give Dr. Graham's opinion little weight, thus there is no error here.

## Conclusion

For the reasons discussed above, the Court finds the Commissioner's determination is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   August 11, 2014                  /s/ Greg Kays
                                                     GREG KAYS, CHIEF JUDGE
                                                     UNITED STATES DISTRICT COURT